**BENNETT et al. v. SCOFIELD, Collector of Internal Revenue.**

**Civil Action No. 217.**

District Court, W. D. Texas,
Austin Division.

Aug. 18, 1947.

Muckleroy McDonnold, of San Antonio, Tex., for plaintiff.

J. M. Burnett, U. S. Atty., of San Antonio, Tex., for defendant.

RICE, District Judge.

The Court finds the facts to be as set forth in the stipulation on file, and concludes, after considering the facts, the briefs of the parties, and the law, that plaintiffs are not entitled to recover herein and that judgment should be rendered in favor of the defendant.

The Court is further of the opinion that the judgment of the District Court of Bexar County, Texas, rendered in Cause Number F–15297, Lucie M. Armstrong versus John M. Bennett et al., is not material to any issue in this cause and, therefore, is not admissible. Houston Farms Development Co. v. United States, 5 Cir., 131 F.2d 577.

The Clerk of the Court will accordingly advise the attorneys of record of the findings and conclusions of the Court, and request defendant to prepare and submit to the Court, in accordance herewith, tentative Findings of Fact and Conclusions of Law, together with Judgment to be entered, and submit copies thereof to the attorney for plaintiffs.

### Findings of Fact.

I. Plaintiffs John M. Bennett, Jr., and Tom R. Armstrong brought this action as the duly qualified and acting executors of the estate of Charles M. Armstrong, deceased, to recover the sum of $1,981.84, with interest, as an alleged overpayment of federal estate tax which was assessed and collected upon the transfer of the net estate of the decedent.

II. The defendant, Frank Scofield, is the Collector of Internal Revenue for the First District of Texas, to whom the above stated alleged overpayment was made.

III. Decedent, who died testate on September 13, 1941, and his surviving wife, Lucy C. Armstrong, were married in 1918 and were domiciled in the State of Texas. Decedent for many years prior to his death, and at the time of his death, owned as his separate property an undivided one-fifth interest in a ranch of 49,117.8 acres of land located in Kenedy County, Texas. Co-owners of the ranch with decedent were his four brothers and sisters.

IV. On July 3, 1934, decedent and the other owners of said ranch entered into an oil and gas lease with Humble Oil and Refining Company for a cash consideration of $100,000, payable in five equal annual installments of $20,000 each. The lease provided for payment by the lessee of the customary one-eighth royalties on oil, gas

454

or other minerals produced or mined from the property. The primary term of the lease was five years with provision made for extending it as to certain "Selected Acreage" and/or "Additional Acreage" under the following specified conditions:

"Selected Acreage.

"Lessee shall have the right to select and designate up to one-third (⅓) of the total acreage described in said lease and may execute an instrument in writing describing and designating the acreage so selected. This lease will terminate as to the acreage so selected on July 3, 1939 if operations for drilling a well are not commenced on said land on or before said date, unless on or before such date lessee shall pay or tender to lessors or to their credit * * * rental in the sum of Eight Thousand, One Hundred Eighty Six and 30/100 Dollars ($8,-186.30) * * * which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months from said date. In like manner and upon like payments or tenders annually, the commencement of drilling operations may be further deferred as to the acreage so selected for successive periods of twelve (12) months each up to July 3, 1954. Provided, however, that unless oil, gas, or other minerals shall have been discovered in paying quantities on said selected acreage prior to July 3, 1944, this lease as to said selected acreage shall terminate as to both parties unless lessee shall have drilled or shall then be engaged in drilling on such acreage a test well * * *.

"If, prior to the discovery of oil or gas on said land lessee should drill a dry hole or holes thereon, or if after the discovery of oil or gas the production thereof should cease from any cause, this lease shall not terminate if lessee commences additional drilling or reworking operations or commences or resumes the payment of said rental * * * on or before the rental paying date next ensuing after the completion of a dry hole or the cessation of production.

"Subject to the foregoing provisions hereof and those that follow, this lease as to such selected acreage shall continue in full force and effect for a period of twenty (20) years from date hereof, and so long thereafter as oil, gas or other mineral is produced from such selected acreage in paying quantities.

"No rental shall be payable on July 3, 1939, or on any subsequent rental payment date as to such 'Selected acreage' in lieu of drilling or production, that is to say, no rental shall be payable while oil, gas, or other mineral is being produced on said premises, nor shall rentals be payable on any rental payment date if lessee is then engaged in drilling operations on said 'selected acreage,' provided, however, should the royalties * * * be less than the annual rental * * * hereinabove provided for, in order to maintain this lease in force and effect as to such 'selected acreage,' lessee shall pay * * * the difference between the actual royalties * * * and the rental for such period on the 'selected acreage' hereinabove provided for. * * *

"Additional Acreage.

"Should lessee desire to retain under the terms of said lease subsequent to July 3, 1939 more than one-third (⅓) of the total acreage covered hereby, it may at its election do so by designating such additional acreage in writing on or before said date, and by paying or tendering to lessors, or to their credit in said depository banks (one-fifth of said sum being payable to each of said lessors) the sum of Six Dollars ($6.00) per acre for the additional acreage so selected by lessee, this lease shall continue in full force and effect without any further payments of any character and without reference to the commencement, prosecution, or cessation of operations or cessation of production until July 3, 1954 and thereafter so long as oil, gas or other mineral is produced from such additional acreage in paying quantities, subject to the further provisions hereof. Nothing herein contained shall relieve lessee from the payment, as hereinabove provided for, of royalties on oil, gas or other mineral produced from the premises covered by this lease."

V. The parties to the lease extended by agreement the date for designating the acreage to August 3, 1939, and prior to that date lessee selected and designated 16,372.-6 acres as "Selected Acreage" and elected to retain all the remaining acreage as "Additional Acreage."

VI. By instrument dated July 26, 1939, the parties to the lease agreed that the terms of payment for "Additional Acreage" were changed from a single payment to payment in ten equal annual installments.

VII. At the time of the decedent's death his one-fifth interest in the then unpaid annual installments which would become due under the "Additional Acreage" provisions of the lease was $27,505.97. The executors, considering that this sum constituted "delay rentals" under the lease agreement and was therefore community property of decedent and his wife, included only one-half thereof, or $13,752.99, in decedent's gross estate for federal estate tax purposes. The Commissioner of Internal Revenue having determined that the unpaid balance of the installments constituted "bonus" or "advance royalty" payments and that the entire $27,505.97 was decedent's separate property which should be included in decedent's gross estate for federal estate tax purposes, assessed a deficiency estate tax in respect thereto. Plaintiffs paid the deficiency, together with interest, to the defendant-Collector of Internal Revenue and thereafter duly filed claim for refund which was rejected by the Commissioner.

### Conclusions of Law.

I. This Court has jurisdiction of the parties and the subject matter.

II. The unpaid balance of the installments owed to decedent, Charles M. Armstrong, at the time of his death by Humble Oil and Refining Company under the "Additional Acreage" provisions of the lease constituted bonus or advance royalty, and not delay rentals.

III. The entire amount of the unpaid balance of the installments, to wit, the sum of $27,505.97, constituted the separate property of Charles M. Armstrong and was properly taxable as such in his estate tax return.

IV. The determination of the Commissioner of Internal Revenue resulting in the deficiency assessment was in all things correct and the collection of the deficiency tax and interest by the defendant was proper.

V. Defendant is entitled to judgment dismissing plaintiffs' complaint with prejudice, together with costs.